UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARLYN LONG,

    Plaintiff

    v.                                         Case No.  1:11-cv-724-HJW

HARTWIG TRANSIT, INC.,

    Defendant

## ORDER

Pending is the defendant's "Motion to Dismiss" (doc. no. 12), which plaintiff opposes. Having fully considered the record, including the pleadings and the parties' briefs, the Court will <u>deny</u> the motion for the following reasons:

### I.  Background and Factual Allegations

In her amended complaint, plaintiff alleges that she was hired by Hartwig Transit on January 18, 2005 (doc. no. 11 at ¶ 9). She drove mail transport trucks while working in a predominantly male workplace (¶¶ 10-12). After several years, she injured her shoulder at work on May 9, 2009 and was off for seven weeks (¶ 14). Upon her return, she alleges that she received an "unwarranted" disciplinary write up for the first time (¶ 15). On January 25, 2010, she reinjured her shoulder at work, but was able to continue working on light duty until July 15, 2010, when she had surgery (¶ 16). She filed a Workers' Compensation claim for her shoulder injury and returned to work on December 8, 2010 (¶ 17).

Plaintiff alleges that upon returning, she experienced "harassment and hostility" from male drivers (¶ 18). She points to several incidents that allegedly

reflect such harassment and hostility. On February 11, 2011, a male driver failed to fuel a truck with a broken fuel gauge before transferring the truck to plaintiff, who then ran out of fuel (¶ 19). A second male driver warned her that "You need to f_ _ _ing check your truck. You be real careful going home." Plaintiff reported this to the terminal manager Cara Ball (¶ 19). On February 14, 2011, a third male driver did not properly attach plaintiff's truck to the trailer, although plaintiff noticed and properly secured it (¶ 20). Several other male employees were present and watching, thus appearing to plaintiff that she had an audience waiting for her to dump her trailer. Plaintiff alleges the other drivers did these things "intentionally." Plaintiff again complained to Ball, who advised her to call the company owner, Gerald Hartwig (¶ 21). Plaintiff alleges that Hartwig was dismissive of her concerns. Plaintiff received a written warning on February 15, 2011, for running out of fuel. Plaintiff alleges that on April 17, 2011, a fourth male driver shouted profanities at her in front of a supervisor. She complained about this to Ball and Hartwig (¶ 23).

    Four days later on April 21, 2011, Hartwig terminated plaintiff for the stated reasons of "talking on a cell phone while driving and other safety violations" (¶ 24). Plaintiff alleges that Hartwig would not discuss the matter any further. Plaintiff alleges she had not received any written disciplinary actions for talking on a cell phone or other safety violations (¶ 24). Defendant subsequently terminated her health insurance and disability coverage as of April 30, 2011, but deducted additional payments for insurance coverage from the post-termination

payout of her accrued vacation time (¶ 25). Plaintiff believes that she was replaced by a male driver (¶ 32).

On October 14, 2011, plaintiff filed a three-count federal complaint, asserting diversity jurisdiction and raising only state law claims (doc. no. 1). On February 5, 2012, she filed a five-count amended complaint, alleging causes of action for: (1) Workers' Compensation retaliation under Ohio R.C § 4123.90; (2) sex discrimination under Ohio R.C. § 4112.99; (3) sex discrimination under Title VII, 42 U.S.C. §§ 2000e; (4) unjust enrichment under Ohio common law for improperly withholding insurance premiums from plaintiff's post-termination checks; and (5) retaliation under Ohio R.C. § 4112. The amended complaint retains the allegation of diversity jurisdiction, but does not mention any amount in controversy.

In her amended complaint, plaintiff indicated that she had "timely filed" an EEOC charge (date unspecified) and received a "Notice of Right to Sue" dated January 31, 2012 (¶¶ 6, 7), but did not attach a copy of the charge or notice. Plaintiff seeks reinstatement and other injunctive relief, compensatory damages (including lost pay and benefits), punitive and "liquidated" damages, front pay, prejudgment interest, attorneys fees, and costs. With respect to her fifth claim, plaintiff indicates that she seeks compensation pursuant to Ohio R.C. § 4112.99.

Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted. Defendant attached two exhibits: a copy of the "Independent Contract Mail Driver's Association Collective Bargaining

Agreement With Hartwig Transport, Inc." ("CBA") and a copy of the two-page post-termination grievance filed by plaintiff on May 17, 2011 (doc. no. 12, Exs. A, B). This grievance concerned plaintiff's complaints about events from April 17 to 21, 2011, namely, that a male driver had cursed and yelled at her for allegedly spreading rumors about his sex life, that Ball "wasn't going to do anything" about the incident, and that Hartwig had fired plaintiff on April 21, 2011 for "talking on the cell phone while driving" and other safety violations but would not discuss the stated reasons with plaintiff.

Plaintiff filed a response and attached an email, dated September 30, 2011, from union representative Stanley Jakala (doc. no. 18-1 at 2). The email advised that plaintiff's post-termination grievance was denied on August 11, 2011 and that the union had declined to pursue arbitration because plaintiff's "grievance stated certain admissions by her that supported a dismissal." Defendant filed a reply (doc. no. 21). This matter is fully briefed and ripe for consideration.

**II. Standards of Review**

**A. Rule 12(b)(1)**

Rule 12(b)(1) motions to dismiss fall into two categories: facial and factual challenges to subject matter jurisdiction. <u>United States v. Ritchie</u>, 15 F.3d 592, 598 (6th Cir. 1994). A *facial* attack challenges the sufficiency of the complaint, whereas a *factual* attack challenges the factual existence of jurisdiction. <u>Id</u>. Under a factual challenge, the Court has broad discretion to consider exhibits for the limited purpose of determining jurisdiction, and no presumption of truth applies to the jurisdictional facts alleged. <u>Ohio Nat'l Life Ins. Co. v. United States</u>, 922

F.2d 320, 325 (6th Cir. 1990). The court is free to consider evidence in order to satisfy itself as to the existence of its jurisdiction to hear the case, Ritchie, 15 F.3d at 598, and may do so without converting to summary judgment. Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). "[T]he plaintiff has the burden of proving that the court has jurisdiction over the subject matter." Golden v. Gorno Bros., Inc., 410 F.3d 879, 881 (6th Cir. 2005); Bowers v. Wynne, 615 F.3d 455, 457 (6th Cir. 2010).

B.  Rule 12(b)(6)

Motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted test the sufficiency of a complaint, and the first step is to identify any conclusory allegations. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although the court must accept well pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . .  a plaintiff's obligation to provide the

'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. 555. In considering a Rule 12(b)(6) motion, a court must focus on whether the plaintiff is entitled to offer evidence to support her claims, rather than whether she will ultimately prevail. Id. Although courts generally do not consider matters outside the pleadings when reviewing a complaint for legal sufficiency, a court may consider exhibits attached to the pleadings, if the documents are referenced in the complaint and are central to the plaintiff's claims. Nixon v. Wilmington Trust Co., 543 F.3d 354, 357 (6th Cir. 2008).

 III.  Discussion

A. Whether this Court lacks subject matter jurisdiction over plaintiff's claims

Defendant first contends that this Court lacks subject matter jurisdiction over plaintiff's statutory claims because the CBA contains a general arbitration clause and an anti-discrimination policy. For the limited purpose of determining jurisdiction in this "factual" challenge, the Court may consider pertinent exhibits, including the CBA.

Defendant asserts that "as a truck driver for Hartwig, plaintiff worked under the terms and conditions of a CBA negotiated by her union" (doc. no. 12 at 6). The CBA governs such matters as wages, benefits, seniority, hours of work, requests for leave, safety equipment, and disciplinary procedures for rule violations. The CBA sets forth the company's policy against discrimination and harassment, including sexual harassment. § 1, p. 23-24. The section of the CBA entitled "Work Rules Governing Conduct of Employees of this Company"

indicates that "[a]ll forms of harassment, retaliation, coercion, interference, intimidation and threats are strictly prohibited by Hartwig Transit, Inc. as well as state and federal law." In a separate section, the CBA provides for arbitration of "[a]ny dispute arising out of the meaning of application of this Agreement" and provides that the "parties agree that the power and jurisdiction of any arbitrator chosen under the terms of this Agreement shall be limited to deciding whether there has been a violation of a provision of this Agreement." Art. XXII, pp. 17-19.

Defendant argues that "as to the claims listed in the complaint, each cause of action relates to incidents properly dealt with under the terms of the CBA" (doc. no. 12 at 7). Defendant points out that the CBA requires drivers to fully inspect their rigs before and after runs, prohibits drivers from using cell phones while driving, and provides for discipline for infractions, such as running out of fuel. Essentially, defendant argues that plaintiff has impermissibly recast various workplace incidents covered by the CBA as statutory claims. "Federal courts are generally not in the business of refereeing . . . common workplace conflicts," <u>Michael v. Caterpillar Fin. Servs. Corp.</u>, 496 F.3d 584, 600 (6th Cir. 2007). Based on the CBA's language calling for arbitration of "[a]ny dispute arising out of the meaning of application of this Agreement," defendant argues that the CBA provides a "clear and unmistakable agreement" to arbitrate the plaintiff's statutory claims (doc. no. 12 at 6).

Plaintiff responds that the CBA does not specifically mention Title VII or any Ohio anti-discrimination statutes, much less require that any such statutory claims be submitted to arbitration. Plaintiff asserts that the CBA does not provide

a "clear and unmistakable" waiver of her right to bring her Title VII and other statutory claims in federal court (doc. no. 18 at 2).

Courts may properly decide threshold questions of "whether an arbitration clause . . . applies to a particular type of controversy." United Steel Workers of Am. v. Saint Gobain Ceramics & Plastics, Inc., 505 F.3d 417, 421 (6th Cir. 2007) (en banc) (citing Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83 (2002)); Mathews v. Denver Newsp. Agency, LLP, 649 F.3d at 1199, 1206-07 (10th Cir. 2011) ("the crucial inquiry is whether the CBA's arbitration provision covered [plaintiff's] statutory claims"). "[I]f an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement." Int'l Union of Elec., Salaried, Machine and Communications Wrks. of Am., 2010 WL 348314, *5 (S.D.Ohio) (J. Dlott) (quoting NCR Corp. v. Korala Assocs., Ltd., 512 F.3d 807, 814 (6th Cir. 2008)). The mere existence of a CBA does not preclude an employee from bringing claims under federal or state statutes. Unroe v. Bd. of Educ. Rock Hill Local Sch. Dist, 2006 WL 22081, *16–17 (S.D.Ohio) (citing Gilmer v. Interstate Johnson/Lane Corp., 500 U.S. 20, 27 (1991).

For statutory discrimination claims to be subject to arbitration, such intent must be "explicitly stated" in the CBA and not otherwise prohibited by statute. Penn Plaza LLC v. Pyett, 556 U.S. 247, 258-59 (2009) (citing Wright v. Universal Maritime Service Corp., 525 U.S. 70, 80 (1998)). The CBA must "clearly and unmistakably" require the parties to arbitrate the specific claims at issue. Id. The Sixth Circuit Court of Appeals has emphasized that "a statute must be

specifically mentioned in a CBA for it to even approach Wright's 'clear and unmistakable' standard." Bratten v. SSI Serv., Inc., 185 F.3d 625, 631 (6th Cir. 1999). Although defendant points to its anti-discrimination policy in the CBA, the inclusion of such a policy "is not the same as requiring union members to *arbitrate* such statutory claims." Id. at 631-32. The CBA's general arbitration clause does not expressly provide for arbitration of claims brought pursuant to Title VII or any Ohio anti-discrimination statutes, and thus, the CBA did not waive plaintiff's right to bring such claims in a federal judicial forum. See, e.g., Kenney v. Superior Printing Co., 215 F.3d 650, 654 (6th Cir. 2000). This Court has subject matter jurisdiction over plaintiff's statutory claims.[1]

**B. Whether Count I (Workers Compensation retaliation) states a claim for relief**

Next, defendant argues that the factual allegations of the amended complaint do not state a plausible claim of Worker's Compensation retaliation for purposes of Rule 12(b)(6). The relevant Ohio statute provides: "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer." Ohio R.C. 4123.90.  The statute has a narrow scope and does not prevent an employer from terminating an employee for just and lawful reasons, rather, it protects only against adverse employment actions "in direct response to the filing or pursuit of a workers' compensation claim." Ferguson v. SanMar

---

[1] The parties have not discussed the amended complaint's allegation of diversity jurisdiction.

Corp., 2009 WL 2489258, *12 (Ohio App. 12 Dist.) (citing White v. Mt. Carmel Med. Ctr., 150 Ohio App.3d 316 (2002)).

The Ohio Supreme Court has recognized that, to state a claim under Ohio R.C. § 4123.90, it is enough for a plaintiff to allege that she: (1) was injured on the job, (2) filed a claim for workers' compensation, and (3) was discharged by her employer in contravention of § 4123.90. Wilson v. Riverside Hosp., 18 Ohio St.3d 8, 10 (1985)); and see, e.g., Salyer v. Honda of Am. Mfg., Inc., 2005 WL 2338786, *6 (S.D. Ohio) (J. Holschuh) (same, citing Wilson).

In her amended complaint, plaintiff has alleged that 1) after working for over four years with no disciplinary violations, she was injured on the job on May 9, 2009, and reinjured on the job on January 25, 2010; 2) she filed a Workers' Compensation claim based on these injuries; 3) the defendant "retaliated against plaintiff by subjecting her to unwarranted discipline and terminating her employment because she filed a workers' compensation claim in violation of § 4123.90" (doc. no. 11, ¶¶ 26-28). Taken as true, and giving plaintiff the benefit of reasonable inferences, the allegations of the amended complaint are sufficient to state a plausible claim under Ohio R.C. § 4123.90 for purposes of Rule 12(b)(6).

Defendant argues that plaintiff has not sufficiently alleged a "nexus between the adverse employment action and the . . . claim" (doc. no. 12 at 9). Defendant cites Sutton v. Tomco Machining, Inc., 129 Ohio St.3d 153, 154 (2011) for the proposition that a plaintiff must *prove* a "nexus between the adverse employment action and the . . . claim." There, the Ohio Supreme Court explained that "the retaliatory nature of the discharge and its nexus with workers'

compensation must be established by a preponderance of the evidence." Id. Plaintiff responds that a nexus "may be established by temporal proximity and other circumstantial evidence tending to suggest an unlawful reason for the adverse employment action" (doc. no. 18 at 10).

Respective counsel are venturing into summary judgment arguments that are not appropriately addressed at this time. See Ferguson, 2009 WL 2489258 at ¶¶ 16-19 (explaining the difference between stating a claim for purposes of Rule 12(b)(6) and establishing a "causal link" with indirect evidence as part of a prima facie case on summary judgment). For purposes of Rule 12(b)(6), the Court need only consider whether the amended complaint's factual allegations adequately state a plausible claim of Workers Compensation retaliation. They do. See Wilson, 18 Ohio St.3d at 10.

**C. Whether Count II (Sex Discrimination Under Ohio R.C. § 4112) and Count III (Sex Discrimination Under Title VII) fail to state a claim for relief**

Next, defendant contends that Counts II and III respectively do not state claims for relief under state or federal law (doc. no. 12 at 10).

Title VII provides in relevant part that "[I]t shall be an unlawful employment practice for an employer – (1) to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2. Similarly, Ohio R.C. § 4112.02 provides that "[i]t shall be an unlawful discriminatory practice: (A) For any employer, because of the . . . sex . . . of any person, to discharge without just cause . . . or otherwise to discriminate

against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." This Court may appropriately analyze these two claims together. See <u>Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund</u>, 349 F.3d 300, 305 (6th Cir. 2003) ("federal and state law claims of [sex] discrimination may be [analyzed] together"); <u>Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.</u>, 66 Ohio St.2d 192, 195 (1981).

Although defendant accurately refers to the United States Supreme Court's decisions in <u>Twombly</u> and <u>Iqbal</u>, defendant then argues that "to make a claim for discrimination, plaintiff must show that she: (1) is a member of a protected class; (2) was subject to an adverse employment decision; (3) was qualified for the position; and (4) was treated differently than a similarly-situated individual outside the protected class (doc. no. 12 at 10). Defendant cites a case decided on summary judgment, <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241, 1246 (6th Cir. 1995) for the "elements" of these claims.[2]

Defendant concedes the first three "elements" but argues that plaintiff has not alleged that any similarly situated individuals outside the protected class were treated differently, i.e. that male drivers were not disciplined for the same violations as plaintiff. Plaintiff responds that the amended complaint alleges that she "was disciplined despite the fact a male driver who failed to fill up the truck was at fault" (doc. no. 18 at 11). Plaintiff then argues that she was replaced by a

---

[2] <u>Talley</u> was overruled on other grounds by <u>Gross v. FBL Financial Services</u>, 557 U.S. 167 (2009).

male driver and that this is "sufficient to establish the fourth prong of her prima facie case."

Again, the parties are making arguments that relate to summary judgment. A plaintiff need not plead facts establishing each element of a prima facie case of discrimination in order to survive a motion to dismiss. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002) ("an employment-discrimination plaintiff satisfies her pleading burden by drafting a short and plain statement of the claim consistent with Federal Rule of Civil Procedure 8(a)"). At the initial pleading stage, the complaint need only give the defendant "fair notice" of the basis for plaintiff's claims. Id. at 512; Lindsay v. Yates, 498 F.3d 434, 439-440 (6th Cir. 2007); Pedreira v. Ky. Baptist Homes for Children, Inc., 579 F.3d 722, 728 (6th Cir. 2009) (noting that this aspect of the holding in Swierkiewicz survives Twombly).

The Sixth Circuit Court of Appeals has emphasized that the plaintiff's initial burden to make a "prima facie" case on summary judgment should not be confused with basic pleading requirements. Keys v. Humana, Inc., 684 F.3d 605, 609 (6th Cir. 2012). At this early stage in the proceedings, the Court need only consider whether the amended complaint sufficiently states plausible claims for purposes of Rule 12(b)(6), not whether plaintiff has made out a prima facie case based on indirect evidence. Id. (explaining that "*McDonnell Douglas* is an evidentiary standard, not a pleading requirement" and further pointing out that such burden-shifting evidentiary framework may not even apply if a plaintiff relies on direct evidence). Thus, the present parties' arguments are premature, as they pertain to the evidentiary framework on summary judgment. See Pedreira, 579

F.3d at 728 ("On a motion to dismiss, however, these arguments [regarding the prima facie case] are premature"), cert. denied, 131 S.Ct. 2143 (2011).

As to whether Counts II and III have sufficiently stated claims that are "plausible" on their face, see Twombly, 550 U.S. at 570, plaintiff appropriately points out that she has alleged that "she was only one of a handful of female drivers," that she experienced "harassment and hostility" from male drivers, that her employer was dismissive of her complaints, and that she "was disciplined despite the fact a male driver who failed to fill up the truck was at fault" (doc. no. 18 at 11, citing Amended Complaint at ¶¶ 12, 18-22). While plaintiff's reference to "harassment and hostility" is largely conclusory, she does point to several alleged examples in the factual section of her amended complaint and asks the Court to draw an inference of discriminatory animus from these incidents. While "mere personal belief, conjecture and speculation are insufficient to support an inference of . . . discrimination," Grizzell v. City of Columbus, 461 F.3d 711, 724 (6th Cir. 2006), plaintiff essentially alleges that certain male drivers were intentionally sabotaging her at work.

While it is a close call as to whether this is mere speculation or a reasonable inference, the Court must focus on whether the plaintiff is entitled to offer evidence to support her claims, rather than whether she will ultimately prevail. Twombly, 550 U.S. 555. "According to the Supreme Court, 'plausibility' occupies that wide space between 'possibility' and 'probability.' " Keys, 684 F.3d at 610 (quoting Iqbal, 556 U.S. at 678). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the

plausibility standard has been satisfied." Id. Accepting the non-conclusory factual allegations as true for purposes of Rule 12(b)(6), and drawing any permissible reasonable inferences from those factual allegations, the amended complaint is deemed – just barely -- to state plausible claims for purposes of Rule 12(b)(6).

**D. Count IV – Unjust Enrichment under Ohio common law**

In Count IV of the Amended Complaint, plaintiff asserts a claim of unjust enrichment and alleges that the company terminated her employment and insurance coverage, and then improperly withheld further insurance premiums from her post-employment payout for vacation time (doc. no. 11 at ¶¶ 41-46).

Under Ohio law, "unjust enrichment occurs 'when a party retains money or benefits which in justice and equity belong to another.'" In re Whirlpool Corp. F.L. Washer Prod. Liability Litigation, 684 F. Supp. 2d 942, 951 (N.D. Ohio 2009) (quoting Liberty Mut. Ins. Co. v. Indus. Comm. of Ohio, 40 Ohio St.3d 109, 110 (1988)). The elements of unjust enrichment are: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." Whirlpool, 684 F. Supp. 2d at 951 (quoting Hambleton v. R.G. Barry Corp., 12 Ohio St.3d 179, 183 (1984)). The amended complaint sufficiently pleads these elements.

In its motion, the defendant devotes two sentences to this issue and asserts that the amended complaint does not allege that plaintiff's "employer sought to terminate her in order to abscond with that portion of her final, post-employment pay check" and that the "likely explanation" for the withholding of

the premiums "might be clerical error" by the defendant (doc. no. 12 at 11). Defendant cites no law or authority in support. Similarly, plaintiff responds in abbreviated fashion that this is tantamount to an admission, that it does not matter whether it was due to clerical error, and that if defendant wishes to refund the money to plaintiff, "she will be happy" (doc. no. 18 at 11). Plaintiff also cites no law or authority in support.

The Court notes that the parties have not directly addressed jurisdiction for this common law claim. Although defendant generally asserted that all claims were subject to the CBA's arbitration clause, it directed its arguments to the statutory claims. Whether a CBA covers a tort claim depends upon "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers Corp. v. Luek, 471 U.S. 202, 213 (1985) (holding that a tort claim was preempted because it was essentially a contract dispute). It is unclear at this time whether resolution of this issue would require interpretation of the CBA. See, e.g., Snyder v. Dietz & Watson, Inc., 837 F.Supp.2d 428, 443 (D. N.J. 2011) (finding conversion claim pre-empted because it would require interpretation of CBA). Rather than ruling on an unbriefed issue, the Court will leave this issue for another day. The matter may be revisited if the parties are unable to arrange a "refund" of any money improperly kept due to "clerical error."

**E. Whether Count V (Retaliation Under Ohio R.C. § 4112) states a claim for relief**

Lastly, defendant argues that Count V fails to state a retaliation claim under Ohio law. Count V succinctly alleges that plaintiff "engaged in protected activity

by complaining to management about sexual harassment and discrimination" and that defendant intentionally "disciplined plaintiff and/or terminated plaintiff's employment because she engaged in activity protected by O.R.C. Chapter 4122" (¶¶ 48-49).

Ohio R.C. § 4112.02(I) provides in relevant part that it is "an unlawful discriminatory practice . . . [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section."

Defendant argues that plaintiff did not allege that she engaged in "protected activity" or that there was any causal connection between her complaints and any adverse action. Again, defendant's argument refers to the prima facie evidentiary framework for summary judgment, under which plaintiff must initially prove "that (1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." Greer-Burger v. Times, 116 Ohio St.3d 324, 327 (2007).

As already discussed, for purposes of Rule 12(b)(6), the Court merely considers whether plaintiff has alleged sufficient facts to state a plausible claim of retaliation, not whether she will prevail. While Count V itself is quite conclusory, the factual section of the amended complaint alleges that plaintiff complained to Ball about the "intentional failure to fuel" incident and threatening remarks on February 11, 2011, as well as the "intentional failure to hitch" incident

on February 14, 2011 (¶¶ 19-21). She alleges she received a written warning on February 15, 2011, for running out of fuel (which she characterizes as "unwarranted discipline"). She also alleges that she complained to both Ball and Hartwig about the cursing incident of April 17, 2011, and was then terminated on April 21, 2011 for the stated reasons of "talking on the cell phone and other safety violations," when according to plaintiff, she had not been disciplined for any such violations. At this preliminary stage of the proceedings, the facts alleged in the amended complaint, taken as true and drawing permissible reasonable inferences, are deemed sufficient to state a claim for retaliation under Ohio law.

## IV. Conclusion

This Court has subject-matter jurisdiction over the plaintiff's statutory claims. The amended complaint sufficiently states plausible claims for purposes of Rule 12(b)(6).

Accordingly, the defendant's "Motion to Dismiss" (doc. no. 12) is DENIED; plaintiff is directed to file a copy of her EEOC charge and "Notice of Right to Sue" in the record.

IT IS SO ORDERED.

                                                   s/Herman J. Weber
                                     Herman J. Weber, Senior Judge
                                     United States District Court