UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARLYN LONG,

      Plaintiff

    v.                                                   Case No.  1:11-cv-724-HJW

HARTWIG TRANSIT, INC.,

      Defendant

### ORDER

Pending is the defendant's "Motion for Summary Judgment" (doc. no. 37), which plaintiff opposes. Defendant has submitted proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. no. 45). The Court heard oral argument on January 7, 2014. Having fully considered the record, including the parties' briefs, exhibits, proposed findings, oral arguments, and applicable authority, the Court will <u>deny</u> the motion for the following reasons:

### A. Claims Presented

In her amended complaint, plaintiff alleges causes of action for: (1 & 2) gender discrimination under Title VII (42 U.S.C. § 2000e) and Ohio R.C. § 4112; (3 & 4) retaliation under Ohio R.C. §§ 4112 and 4123.90; and (5) unjust enrichment under Ohio common law. Plaintiff contends she was treated differently than males employees and was terminated because of her gender (doc. no. 11, ¶¶ 31, 37). She also contends she was terminated in retaliation for complaining to management about "sexual harassment and discrimination" (¶ 48) and for filing

several workers' compensation claims (¶ 27). She asserts the defendant should refund certain insurance premiums to her (¶ 44).

### B. Alleged Gender Discrimination[1]

Gender discrimination may be proven with direct or indirect evidence. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences," Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004), whereas indirect evidence requires the drawing of an inference, Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003). Plaintiff has not produced any direct evidence. Contrary to plaintiff's suggestion (doc. no. 40 at 24, citing Hartwig Dep. at 218-219), the deposition testimony of Mr. Jerry Hartwig (company owner and president) merely indicates he had grown tired of plaintiff "getting the workplace riled up." Evidence "is not considered direct evidence unless a[n improper] motivation is explicitly expressed." Grubb v. YSK Corp., 401 Fed.Appx. 104, 109 (6th Cir. 2010). None is expressed in the cited testimony. Disruptive behavior in the workplace is a legitimate reason for discharge. See, e.g., Algie v. N.Ky. Univ., 456 Fed. Appx. 514, 2012 WL 34373, at *3 (6th Cir. 2012); Lovelace v. BP Prods. N. Am., Inc., 252 Fed. Appx. 33, 42-43 (6th Cir. 2007). To the extent plaintiff suggested at oral argument that a particular email could be

---

[1] The state and federal claims of gender discrimination may be considered together, as the same evidentiary standard and burden of proof apply. See Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008) ("[a]ll references throughout this opinion to Title VII are therefore equally applicable to the plaintiffs' claims under Ohio R.C. § 4112"); Francis v. Davis H. Elliot Constr. Co., 2013 WL 941527, *4 (S.D.Ohio) (same).

considered "direct" evidence, the email would require inferences in order to be interpreted as plaintiff urges, and thus, by definition, is not "direct" evidence.[2]

Proceeding under the applicable burden-shifting evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), plaintiff must first establish a prima facie case. Upon doing so, the burden shifts to the defendant employer to "articulate a nondiscriminatory reason for its action." Harris v. Metro. Gov. of Nashville & Davidson Cty., Tenn., 594 F.3d 476, 485 (6th Cir. 2010). Plaintiff must then rebut the proffered reason by pointing to sufficient evidence from which the jury may reasonably reject the employer's explanation as pretextual.

It is undisputed that plaintiff is female, was terminated, and was qualified for her job as a truck driver. As for whether she was treated "differently" than similarly situated employees (i.e., male truck drivers at Hartwig), she points out that although she and Todd Burress engaged in a loud altercation with each other, she was terminated shortly thereafter and he was not. She and Joey Hollar had also clashed, and although she complained of his behavior, he was not

---

[2] In such email, the terminal manager Ms. Cara Ball indicated to Mr. Hartwig that she had learned that plaintiff was focused on finding another job rather than returning from her work hardening program, unless she could continue at Hartwig without having to load and unload (Ball Dep. at 94-96, Ex. 10). Ms. Ball indicated "I do not think you have that available, correct? This means you may be done with her on November 7th!" By email, he responded "HAPPY DANCE!!!!!!" (Hartwig Dep. at 11-13, 15). Although the email reflects that they would have been happy for plaintiff to leave, the email does not express a discriminatory reason.

disciplined and she was terminated.[3] Although plaintiff's showing at the fourth step is rather weak, the Sixth Circuit Court of Appeals has observed that the burden of making a prima facie showing is not intended to be "onerous" <u>Martin v. Toledo Card. Consults., Inc.</u>, 548 F.3d 405, 412 (6th Cir. 2008).

Defendant asserts that it fired plaintiff for legitimate, non-discriminatory reasons: specifically, talking on the cell phone while driving, safety violations, and "other," which was not explained to plaintiff at the time, despite her request for an explanation. Defendant now indicates that "other" referred to plaintiff's disruptive behavior in the workplace. Defendant describes various incidents – all involving plaintiff – and strenuously argues that Mr. Hartwig had no discriminatory intent and just wanted plaintiff to "drive her truck" (doc. no. 47 at 3). Defendant points to plaintiff's failing to complete pre-trip inspections, running out of fuel, tailgating, fighting with and/or threatening other drivers, and making derogatory references to a supervisor. Defendant asserts that "the president of the company decided that he had had enough" (doc. no. 47 at 3).

Plaintiff challenges the stated reasons for her discharge. The United States Supreme Court has explained that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993). Plaintiff points out that she was never formally disciplined for talking on the cell phone *while driving*. The evidence reflects that Hartwig

---

[3] Hollar was a supervisor, but could be considered "similarly-situated" to the extent that he and plaintiff both engaged in an altercation and used offensive language in the workplace. Neither was "written up" for this specific incident.

driver/mechanic Ralph Brady received a warning for improper use of his company cell phone after he used up 2,511 minutes talking *with plaintiff* on personal calls. Ms. Ball spoke with plaintiff about this (Ball Dep. at 88-89 "I remember telling her she was putting Ralph in a very bad position. . . . I just verbally spoke with her about it, which I would consider a verbal warning."). The CBA does not allow drivers to talk on the cell phone while driving, although plaintiff claims that "everyone did," using "hands-free" technology (Long Dep. 175). While plaintiff participated in phone calls to Brady, she points out that she was on light duty at the time (i.e. not *driving* a truck). He received a warning; she was terminated.

As for "safety violations," plaintiff admittedly ran out of fuel in her truck on a run to Illinois in 2011. She contends that her ex-husband (also a Hartwig truck driver) did not refuel that truck before transferring it to her with a broken fuel gauge. Defendant accurately points out that drivers are responsible for checking their own trucks, per the CBA, and that such admitted violation plainly had a "basis in fact." As for two earlier violations in 2009, plaintiff contends they were "unwarranted."

The employer's third stated reason ("other") is vague and was not explained to plaintiff at the time of her discharge. Defendant now points to a variety of "other" incidents (including complaints by two male employees that plaintiff had been tailgating them) and explains that plaintiff had become increasingly disruptive and negative in the workplace after her divorce in 2009. Plaintiff denies tailgating. She characterizes certain incidents as attempts by male employees to sabotage her at work. For example, plaintiff contends that on

February 14, 2011, a male mechanic (Travis Quinn) did not properly attach her truck to the trailer, although plaintiff noticed and properly secured it. Several other male employees were present and watching, thus appearing to plaintiff that she had an audience waiting for her to dump her trailer. She complained to management, but according to plaintiff, Mr. Hartwig was dismissive of her concerns and did not discipline Quinn.

On summary judgment review, the Court must construe the evidence and draw all reasonable inferences in favor of plaintiff (as the nonmoving party). Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The Court finds that the evidence is not so "one-sided" that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

## C. Retaliation Claims

Ohio law makes it unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section . . ." Ohio R.C. § 4112.02(I). Additionally, Ohio R.C § 4123.90 provides that "[n]o employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim . . . under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of [her] employment with that employer."[4]

---

[4] Ohio R.C § 4123.90 protects "only against termination directly precipitated by the filing of a workers' compensation claim." Markham v. Earle M. Jorgensen Co., 138 Ohio App.3d 484, 491 (Ohio App. 8 Dist. 2000). The statute does not prohibit termination for lawful reasons. White v. Mt. Carmel Med. Ctr., 150 Ohio App.3d 316, 325 (Ohio App. 10 Dist. 2002), appeal not allowed by 98 Ohio St.3d 1513

To establish a prima facie case of retaliation, plaintiff must show: (1) she engaged in protected activity; (2) she was the subject of an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. Ferguson v. SanMar Corp., 2009-Ohio-4132 at ¶15 (Ohio App. 12 Dist. 2009). Plaintiff alleges she engaged in protected activity by complaining to management about alleged sexual harassment and discrimination and by filing claims for workers' compensation (doc. no. 11, ¶ 48). She alleges she was disciplined and/or terminated for doing so (¶ 49). Plaintiff contends her employer was dismissive of her complaints about being sabotaged at work by male employees.

The parties do not dispute that plaintiff made various complaints, that she filed two workers' compensation claims, and that her employment was subsequently terminated. At issue is whether plaintiff has shown any "causal connection" between these events. See Sutton v. Tomco Machining Inc., 129 Ohio St. 3d 153, 154 (2011) (plaintiff must offer proof of a "nexus" between the adverse employment action and the workers' compensation claim). The evidence reflects that plaintiff injured her shoulder at work on May 9, 2009 and was off for approximately seven weeks. She filed a worker's compensation claim, which was allowed. Shortly after returning to work, plaintiff received her first disciplinary write up on July 6, 2009, for failing to check in/out with dispatch before beginning a run. Several days later, she was written up again, for failing to do a pre-trip

---

(2003); Metheney v. Sajar Plastics, Inc., 69 Ohio App.3d 428, 430 (Ohio App. 11 Dist. 1990).

check of her truck on July 8, 2009. While the filing of such a claim does not insulate an employee from appropriate discipline for work violations, plaintiff contends these write-ups were unwarranted. On January 25, 2010, she reinjured her shoulder and filed another worker's compensation claim. She continued working on light duty for seven moths until July 15, 2010, when she had surgery. In December of 2010, plaintiff returned to full duty as a truck driver.

Plaintiff points out that she drove a truck successfully for Hartwig for four years without incident. Her write-ups and other problems all occurred *after* she filed several workers' compensation claims and *after* she complained on several occasions about alleged harassment to no avail. Such timing, in combination with additional circumstantial evidence (such as the "Happy Dance" email, which permits at least an inference to support plaintiff's claims), is sufficient to show a causal nexus for purpose of summary judgment review. See, e.g., Algie, 2012 WL 34373, at *3.

Plaintiff also points to evidence that she had complained to management of being sabotaged at work by male employees. She contends nothing was done. While "personal conflict does not equate with discriminatory animus," Barnett v. Dept. of Vet. Affairs, 153 F.3d 338, 343 (6th Cir. 1998); Morris v. Oldham Cty. Fiscal Ct., 201 F.3d 784, 791 (6th Cir. 2000), the evidence suggests that her employer did little to look into her complaints. See Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 285-86 (6th Cir. 2012) (the employer must have made a "reasonably informed and considered decision" in order to claim an honest belief). Defendant characterizes this as being tired of her disruptive behavior, whereas plaintiff

contends nothing was done about her complaints of being sabotaged at work by male employees, including her ex-husband. In sum, triable issues exist regarding plaintiff's retaliation claims.

### D. Unjust Enrichment

Plaintiff's last claim is for unjust enrichment. Under Ohio law, "unjust enrichment occurs 'when a party retains money or benefits which in justice and equity belong to another.' " In re Whirlpool Corp. F.L. Washer Prod. Liability Litig., 684 F. Supp. 2d 942, 951 (N.D. Ohio 2009) (quoting Liberty Mut. Ins. Co. v. Indus. Comm. of Ohio, 40 Ohio St.3d 109, 110 (1988)). Plaintiff alleges that her health and disability insurance was discontinued as of April 30, 2011, but that Hartwig improperly deducted insurance premiums from the post-termination payout of her accrued vacation time (doc. no. 11, ¶¶ 25, 41-46).

Defendant asserts that "the paystubs, her testimony, the testimony of Jerry Hartwig, and Hartwig internal memoranda all reach the same conclusion: that the money did not make it into her check because it was used to pay for her insurance for the prior month" (doc. no. 37 at 23, citing Long Dep. 155-56, Exs. U, V). Hartwig issued monthly paychecks after the last day of the previous month (Ex. V). If plaintiff's claim is premised on the earnings statement in the record (Ex. U), her claim is baseless and subject to summary judgment.

In fact, plaintiff noted in her response that she did not "dispute summary judgment on her claim of unjust enrichment" (doc. no. 40 at 9, fn. 1). At the hearing, however, plaintiff's counsel indicated that plaintiff did *not* concede such claim because plaintiff had not received a refund for the allegedly improper

deduction. Counsel, without pointing to any evidence of record, indicated that the insurance company had advised that the premium had been refunded to Hartwig, but that Hartwig had not forwarded it to plaintiff. At the hearing, defense counsel reiterated that the deduction was for the previous month's insurance and that plaintiff was *not* entitled to any refund.

The evidence of record reflects that Hartwig appropriately deducted $374.50 for health insurance for the pay period ending April 30, 2011 (doc. no. 32-21, Ex. U "Earnings Statement"). Plaintiff received the benefit of such insurance for the month of April. To the extent plaintiff may be suggesting that a subsequent check for payment of unused vacation time improperly deducted additional premiums, the record reflects no evidence to substantiate such assertion. In responding to a motion for summary judgment, the non-moving party "may not rest upon [her] mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P.56(e); Celotex, 477 U.S. at 324.

Given the lack of clarity regarding the factual basis for this claim, the Court will not grant summary judgment at this time, and instead, will order plaintiff forthwith to file evidence, if any exists, that any further premiums were actually deducted. See Fed.R.Civ.P. 56(e) (1)("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact . . ."); see also, Fed.R.Civ.P. Rule 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . certifies that

to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support").

Accordingly, the defendant's "Motion for Summary Judgment" (doc. no. ) is **DENIED**. This case shall proceed as scheduled.

IT IS SO ORDERED.

          **s/Herman J. Weber**
          **Herman J. Weber, Senior Judge**
          **United States District Court**